Oyez, oyez, oyez. The Honorable Appellate Court, 5th District, State of Illinois is now in session. The Honorable Justice Moore presiding along with Justice Wharton and Justice Vaughn. First case this morning is number 518-0378, People v. Burgund. Arguing for the appellant, Michael Burgund, is Maggie Heine. Arguing for the appellate, People of the State of Illinois, is Patrick Daly. Each side will have 10 minutes for their argument. The appellant will also have minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. So we'll hear first from the appellant. Good morning, counsel. Are you ready to proceed? I am. You may proceed. Good morning. May it please the court, counsel. My name is Maggie Heine and I represent the appellant, Mr. Michael Burgund. Now this case is back before the 5th District after a retrial. In the first trial, this court sent it back for a new trial because it recognized that this was a truly unusual case that was dependent on the credibility of the defendant's confession, which was later recanted. In the intervening years in the new trial, the defendant was able to put on additional evidence. So the balance of the evidence in this case has now become razor thin. And I don't say that lightly because I recognize that the confession is some of the most powerful evidence that a jury can ever hear. But here you have so much additional information as to how the initial disclosures came out and as to the circumstances surrounding that confession that at the end of the day, the jury was really confronted with deciding credibility. Now at the heart of the direct evidence of abuse, you have the disclosures of MB and the confessions of Michael Burgund. And these are two individuals that experts, including the state's experts as to MB, said were highly susceptible to suggestion. MB's first disclosure was elicited by Mary, her grandmother, who evidence shows was predisposed to suspect Michael of impropriety from things that a defense expert said were not unusual in a child of her age. Things like babbling pulling on herself in the bathtub or giving his daughter a bath without supervision. I also think it's notable that Mary refused to accept when MB tried to go back on her accusation when she said, no one can touch my private parts. Mary said, that's right. Has anyone ever done that? And MB's response was no, no one's ever done that to me. And Mary said, yes, you told me your dad did. And this would have shortly preceded the conversation that led to the more specific disclosures. And then on his part, you have Michael presenting evidence of a manipulative home environment, a predisposition of towards manipulation from himself. He had two attempts to revert before he got to the police station. And then once he was outside of the home for a few days, he recanted entirely. So here we don't have physical evidence, which can show that any crime occurred and we have no spontaneity from either the confession or the disclosures to reinforce the credibility of either. Now, importantly, there was no disclosure at any time from KB. So the primary evidence that anything happened with KB, which supported two convictions, came from Michael's own confession. In Illinois, under the Corpus Delicti rule, a confession is not sufficient to sustain a conviction. There has to be in this case, there needs to be independent corroboration of each of the convictions that are held that are affirmed by this court. When you're looking at independent corroboration, it doesn't have to be something technical where it's each specific part of the statute, but it does need to go to the type of behavior that needs to be something specific to the circumstances and the touching that makes it corroborate those specific allegations. Here, MB's trial testimony was completely weak and non-specific as to KB. It was, were you scared for your little sister? Yes. Do you remember seeing him do stuff? A little, a little. So we have no idea what she, if she didn't remember him seeing him do stuff, what she remembered seeing him do. The only specifics that MB gives to KB that's in the trial record is in the CAC interview, which came after the leading questioning by Mary, when she said he saw, she wanted to do sissy now, and she saw, she saw her touch her peepee, presumably referring to Michael. And this mention is not enough to sustain two convictions for two different types of sexual disclosure, where it's not even clearly a disclosure of abuse, because it's coming from a child, about a child who's in diapers, about one of her caretakers, and there's no follow-up on this. There's nothing to clarify what kind of touching was at issue. I think it's important to recognize that the rationale behind the corpus delicti rules that some people are particularly prone to confessing, even if there's not a crime, and that's exactly what we have ample evidence of in this case. You have Dr. Cuneo's testimony about Michael's specific makeup. You have David Van Hoosen describing the manipulation apparent in his own relationship with Melissa, and then Michael's description of similar manipulation coinciding with what Dr. Cuneo described. And you have Dr. Leo testifying about specific factors present in Michael's case, which put him at risk of being persuaded into falsely believing, falsely remembering abuse, and falsely confessing. He was questioned over multiple days. He was isolated from friends and family. He became less confident in his memory and more confident in his wife and he was repeatedly told that if he would admit guilt, he could help save his girls. In some here, the specifics don't go to KB at all. There's a lack of physical evidence and there's specific testimony undermining the credibility of the confession. So this court should outright reverse the charges as to KB, but there was testimony about MV, so I'd like to talk about our request for a new trial. I think the first one we should talk about is the hearsay limit on Donna Bergen, because those are things that came up, similar things came up in the prior trial. First, I'd like to start with just a basic hypothetical of what hearsay is. Hearsay is when witness A says B told me X, and the person putting on that statement that B told me X is trying to prove or disprove that X happened. Donna Bergen's testimony here was that Melissa told her Michael had a porn addiction. The relevance of this testimony had nothing to do with whether or not he had a porn addiction. Melissa told her that she had been molested by Dana McKee. The importance of this testimony had nothing to do with whether or not she was molested by Dana McKee. In the first case, in both cases, the relevance and probative value of this testimony was that it would corroborate that Melissa tried to control Donna after an 18-month period of estrangement. There was a lot of conflicting testimony over whether Melissa was putting herself in between Michael and his family. Now you have two examples of Melissa specifically talking to Michael's mother while reconnecting with her about his own lust issues. This corroborates Michael's perspective that there was a family home environment where he was often accused of lust issues, something relevant to the environment that led to his falsely persuaded confession. It's direct evidence of the odd dynamic between Melissa, Michael, and Donna, and it's also circumstantial evidence of the home environment. I think it's important to note in the prior appeal, this court recognized that David Van Hoosen, the ex-fiance, the court ruled that his allegations of Melissa making lust accusations against him was relevant, material, and probative because it offered credibility to Michael's description of the circumstances that led to his false confession. Here, Melissa talking to Donna Burgund about Michael having a porn addiction is even more direct than the evidence with David Van Hoosen, so it was even more probative and should have come even more so. So it wasn't just Michael's word. Instead, there was this moment where Donna was pulled into what the molestation with Dana McKee, this was relevant because it was a part of how Melissa garnered sympathy for herself in a religious community, particularly when she's trying to explain coming from a non-traditional family. So as her marriage with Michael is falling apart and they're trying to figure out reconnecting with his parents, she brings up that she's been molested in the same breath as telling her about Michael having a porn addiction. Now, the state argues that there wasn't an appropriate foundation and that Melissa needed to be asked about denying her memory of speaking with anyone or that we needed more information on what the porn addiction testimony would have been, but everything that's needed is in the record. There is no need for Melissa to deny a specific memory, although she does make a more general denial. Here, it's not hearsay. The relevance of this evidence has nothing to do with whether it's true or false. It has to do with what Donna personally heard Melissa tell her. So that's not hearsay. So we don't need to come within a hearsay exception. And that's something that was also analyzed in the prior opinion. So I'd like to briefly say on prejudice that Melissa's credibility or her lack thereof is at the very heart of the state's prosecution. And that's not for me, that's from the prior appeal. That's only more true now. When this court reviewed a similar quantum evidence in the first appeal, it recognized how heavily dependent this case was on Melissa's credibility in describing the home environment that led to a false confession. And again, a confession is some of the most powerful evidence that a jury can hear. And a falsely persuaded confession is extremely rare and extremely counterintuitive, which is why the expert testimony was allowed to proceed. So here we're talking about the evidence that's going to connect up the dots between the expert's testimony and what was actually going on in Michael's life at home that led to the falsely persuaded confession. So it was vital that he be allowed to tell the entire narrative. I see I'm out of time. There are no questions. Any questions? Judge Vaughn? No, thank you. Judge Wharton? No questions. Okay, thank you. You'll have an opportunity on rebuttal. Counsel for the state. Thank you, your honor. Good morning, your honors. May it please the court. Ms. Heim, my name is Patrick Daly. I'm here on behalf of the people of the state of Illinois. Turning first to the reasonable doubt, corpus delicti issue raised by the state's case. It's important, I think, at the outset to, again, emphasize the appropriate standard of review that this court is required to adhere to, which is that the evidence is viewed in the light most favorable to the prosecution. This is a standard that is as applicable in any kind of general examination of the sufficiency of the evidence as it would be here, where the defendant is raising a specific corpus delicti argument. Now, the corpus delicti here comes down to the fact that the state's case, and this is conceded here quite openly and frankly, because it's pretty obvious from the trial itself, that the state's case was constructed significantly on the defendant's confession. It is, as this court will see, or if it hasn't already, that this is one of the more remarkable confessions that you're ever going to see, both in its scope, its detail, and its particularity of facts, a particular characteristic of which I think is important to know here and later, that mitigates against this proposition of the defense, that this was all kind of generated by the evil machinations of Mary Buttrey and the defendant's wife, Melissa Bergen, to get him to admit to doing something he never did. Nonetheless, turning here to the corpus delicti argument, the necessity or quantum of evidence that is required of the state to establish the corpus delicti for an offense has to relate to showing, number one, whether a crime occurred, and number two, whether a crime was committed by the defendant. Now, the particulars of the corpus delicti evidence do not have to themselves meet the standard of proof beyond a reasonable doubt. They simply have to provide some measure of evidence to establish that a crime was committed and the defendant was the perpetrator of this particular crime. In this instance, the defendant is focusing on KB. KB was two years old at the time the defendant gave his confession. There is evidence in the record that there was an attempt to forensically interview her, but it was not successful, simply because of her particular age. Defendant is correct in the sense that there's no forensic evidence, at least to the extent that we are going to look at biological material. Okay. What we do have here, as far as corroboration goes with regards to corpus delicti, is that the really kind of comes in two principal phases. One, when MB was interviewed, she did state spontaneously, and I emphasize this spontaneously, so this is not something that was kind of teased out of her by the interviewer, that while describing what things her father was doing to her, she said, prompting that that daddy touched KB's PP as well, and this came right after the young MB was describing the defendant doing the same thing to her. Let me jump to count five. Count five is with KB anal penetration, digital penetration. Correct. The corroboration, the confession and MB's testimony talked about the froggy game and specifics about what happened to MB. With regard to, I think, count four, she says, I saw him touch KB's PP, but there's no discussion about KB's anal penetration, so does the corroboration of one part cover the whole confession, or do you have to have corroboration of each count? I think that there has to be some corroboration of each count, but the corroboration of that count, Judge, comes in the form of the medical examinations by the family physician, Dr. Hill, where KB was describing consistent rectal and anal pain over the course of a period of time, which stopped after the abuse had ended. I would also note, Judge, that with the fact that the defendant, in the course of his interrogation, described in particular details, things like the froggy game, unique characteristics, which were really independently stated by both MB and the defendant, and that defendant had indicated in his interview that he had engaged in both anal and vaginal penetration in the course of his conduct, and the fact that MB is describing this particular same sort of game, I think also serves a corroborative effect as well, that where the defendant is basically admitting or acknowledging that he's doing these things, that MB's statement providing, I think, that kind of So I think that, coupled with the PP, which is also, I think, sort of falls in a lockstep with the defendant's statement about the overall general conduct, that, coupled with Dr. Hill's testimony, I think, again, none of those things that I'm describing here are going to be enough to get you to the promised land of a conviction. Certainly not, but under the lesser and, I think, more relaxed standard of establishing the corpus delicti for both of those counts, that the evidence there, if believed by a jury, and Dr. Hill was quite adamant that that was, from her opinion, products of sexual abuse, that that would be sufficient for the jury to find the defendant guilty of those two counts with respect to KB herself. I want to emphasize as well, defendant's counsel notes that this is a credibility issue. It is, in a sense of it, although the credibility determination really kind of comes down to between the defendant in his statements to everybody else before and in his statements now, which is, to me, kind of a false credibility balance, because we're being asked to believe whether he's being truthful or being lying before or now. I do want to talk here. I only have a little bit of time left, but I do really want to get to this hearsay. There are two, well, really kind of three aspects to this. Questions posed to Mary Buttrey regarding her deposition testimony. I don't know if we really discussed that at all, but I do want to get to Donna McKee, excuse me, the Melissa Bergen's statements that she was allegedly, or that she claimed that she had been sexually abused by Mr. McKee, her father, stepfather, I don't recall which. Counsel and I, I think probably, I don't know if we're really in the same page when it comes to our understanding of the hearsay rule. But before I even really talk about that, I think it's important to look at what it is at defense counsel below. Excuse me. Is it really even a hearsay argument that was a more of an improper impeachment argument? It's well, it's really kind of both because the hearsay that's involved here is really the substance of the fact that she made these allegations. The whole bias objective, which is one of the things that motivated this court to remand this for a new trial, stems from the statements that Melissa Bergen purportedly made to several individuals alleging, as defendant claims falsely, that she had been molested by McKee. So the statement is the hearsay. The statement is that which the state cannot cross-examine because that individual is not on the stand at that time. And it does come down, and you're correct, Your Honor, it is allows for the introduction of this hearsay for that limited purpose of impeachment or perhaps a substance of evidence if the rules are met with regards to admitting that prior inconsistent statement in that fashion. But in order to do the impeachment, you have to confront the witness with this particular statement. As the court, I think, adroitly and correctly noted, nowhere in defense counsel's examination of Melissa Bergen was she ever asked whether she told Donna Bergen that she had been molested by McKee. Never. I've read that transcript five times. I can't find it. The judge didn't find it. And even defense counsel's like, well, I think I maybe asked her whether anybody had ever said that she ever said that to anybody. He asked no such question. So when it comes down to it, in order to get that hearsay in there as far as impeachment's concerned, you have to perfect that impeachment. He didn't do so. So there's no error here with regards to the court's ruling on that. Now, the court was wrong with regards to the introduction of the pornography. And I go into some detail in my brief, which I won't have time to get into here with regards to why the court should have allowed the cross-examination on that. But again, you know, this is a plain error analysis. And, you know, this confession, I think, is based upon so many details and so many unanswered questions about why and all these implanted memory statements. And they somehow coached MB to make all these statements to the CAC interrogator and interviewer. It's just complete rubbish. And I think the jury saw through the first trial and it saw through it through the second trial as well. Does court have any other questions? I see I'm out of time. Any questions, Justice Bowen? I do have one question. Nobody got to it because of time, but the restitution issue is the state conceding that was an improper enhancement of the sentence on retrial or you are standing on the, it wasn't argued in post-trial. And so it's still fair game. I, for purposes of having to make the argument, I do assert a waiver argument or a forfeiture argument. But I do understand that this is probably ripe also for a plain error analysis. And then the court reaches that, then I do admit that that would be an improper increase in the sentence. Thank you. Thank you, Judge. That's all. Justice Wharton. One more question. Yes, Your Honor. In your statement, you mentioned the possibility that there might've been some evil motive behind some conspiracy of the mother and daughter to use those words, but to implicate the defendant, was it necessarily throughout this trial, any indication that there might've been some evil motive or there might've been a situation where people might've been misguided or in some way based upon a religious background motivated, but not necessarily evil, but they believe that they were doing what they were doing for the correct reason? Okay. Well, Justice Wharton, I'll answer that very bluntly. I do think that a misguided characterization, assuming for the sake of argument here, that Burgund and Buttrey were, I guess, psychologically manipulating the defendant to believe that he was having lustful thoughts or improper thoughts about other women or things like that. But when we jumped the bridge to piecing together a story in which we're going to convince this defendant that this is true and what happened, that involves the repeated, repeated sexual molestation of both of his infant and toddler children over the course of years, all for a purpose that even defense counsel couldn't sputter out at trial other than, maybe they're trying to set him up for a more advantageous custody situation. That's evil. Two people to do that, that's evil, Judge. I'm sorry. And there's no other way about it. And I think the jury is going to have to think of that because you're not just affecting the defendant in that situation, you're affecting that child. And when you start affecting child, I don't know what other characterization is appropriate, but evil. And that would be my response. Thank you. Anything else, Justice Wharton? No, sir. Okay. Rebubble? Justice Wharton, I'd love to talk about that idea of what happened here. And is there any way to view this as anything other than some wild conspiracy theory? And I think there is. Dr. Huff's testimony came in and he talked about confirmation bias. And you had Mary's testimony coming in talking about what first got her concerned about Michael Bergen. And they were things like wearing, the way he looked at his daughter when she was wearing a princess dress, her babbling dad out while Mary was changing her diaper and her touching herself while she was in the bath. All things that happened at a time that an expert in child development said, these weren't declarations of sexual abuse because children at that age don't even have predisposed to view this person as doing something with her granddaughter. And then the first disclosures, Mary had to elicit them. She had to ask leading questions. And again, you have an expert talking about how if you ask a child young enough, a forced result question, so like, were you abused? You're more likely to get an answer. Yes. Did daddy abuse you? Was it daddy? You're more likely to get a yes. There's a suggestion just being in being asked a forced choice question. And those things did happen from Mary and her first questioning. And then once that ball starts rolling, how hard is it to step back and say, maybe I'm wrong. Maybe I've traumatized my own granddaughter, my own daughter, and I was wrong. I think it's very hard to accept that. And all of your presence is going to go towards protecting your children, even if it's at the fault of imprisoning someone who did not commit these crimes. And that's what makes this case so razor thin, what makes it so difficult for a jury to err not on the side of convicting someone that might be innocent, because we just want to protect the kids, but to really ask themselves the question, is there proof beyond a reasonable doubt? And I think when we talk about MBs comments, any of them being spontaneous in the doctor's appointment, you have to recognize those comments come after she's been questioned multiple times by Mary and Melissa. And it's a doctor's appointment with her sister, where both girls were examined and her mom was crying. So it's spontaneous, not in any traditional sense that it comes up in the case law. You have the frog game coming up. But I want to point out MB did not loop KB into the frog game. The frog game was described differently in the CAC interview. So it involved presumably different body parts, because there's no reference to any of the defendant's body parts versus what he described in saying MB said to her, you have a lot of variation. Mr. Daly was referencing the fact that there were a lot of details in this confession. That didn't change the fact that you still have to get proof beyond a reasonable doubt in cases like Sargent and McCown. And you do have a phone call where Mary's in the room, and the defendant is shaking, confessing to Melissa over the phone. And Melissa, both Melissa and the defendant described it as she would confront him with things that MB had said, and he would agree that he did them. And I also want to point out that in the actual confession video in the police station, where he is voluntarily speaking, he says multiple times, if the girls said it, it was true. And I think both Mary and Melissa referenced that his first confessions were if they said it, it was true. And in the confession with the police, he says repeatedly, I want to get the girls help. I'm here because I have to get the help. That's all a factor that can go towards why he's come to believe not his own memories, but that this happened. And his goal now is to get the girls help. All of which is to say it's incredibly important for the jury to be able to understand this is a rare thing. This is not something that you often have these piles of evidence of a confession, but also the confession that comes under a lot of scrutiny. And again, there's talk of this abuse happening for years. But the disclosure to Mary through to the confession at the police station was a matter of I think five days. It was March 30 to April 4. And then all he said when he spoke to family after that was, I'm sorry, I'm so sorry. And then in less than two weeks, he said none of it was true. And even before that, before he was taken to the police station, he called Melissa and said, I just saw 48 hours where you can believe memories that didn't really happen. And I can't. So I want to point out even if this court finds that the evidence is sufficient for some or all of the convictions dealing with KB, you still have extremely close evidence. And the evidence, particularly the medical evidence was inconclusive as to any specific sexual abuse or regular abuse, but you still have Dr. Hill giving this large narrative testimony and you have this evidence insinuating that herpes is somehow involved in the case. And those are all things that counsel also should have questioned before the jury and didn't. And we have that in our brief in issue three, I can see that I'm out of time. So if there are any specific questions, I'd love to answer them. Any questions, Justice Vaughn? No questions. Thank you, Justice Wharton. No question. Okay. Thank you, counsel. The court will take the matter under advisement and issue its decision in due course.